IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

ROBERT FLOYD,

    Plaintiff,

vs.                                                Case No. 4:10cv289-RH/WCS

WALTER McNEIL, et al.,

    Defendants.

_____/

## REPORT AND RECOMMENDATION

Defendants filed a renewed motion for summary judgment on July 28, 2011. Doc. 49. The *pro se* Plaintiff was advised of his obligation to respond with opposition to the motion for summary judgment, doc. 54, and after the completion of discovery, Plaintiff has responded. Doc. 55. The motion is ready for a ruling.

**Allegations of the Amended Complaint, Doc. 9**

Plaintiff is a state prisoner who claims his Eighth Amendment rights are violated because Defendant have failed to provide him with a nutritionally adequate diet. Plaintiff complains the master menu provided to inmates has a high level of soy and adversely effects Plaintiff's health. Plaintiff names as Defendant the three persons who

served on the menu committee, and the Secretary of the Department of Corrections who implemented the new menu.  Plaintiff complains that he has experienced digestive problems, dizzy spells, numbness, trouble concentrating, voice strain, weight loss and constant feeling of hunger, fatigue, dry skin rash, joint pain and cracking, high cholesterol, and constipation or diarrhea.  He believes "all the symptoms are due to a high level of soy in" the prison's diet[1] and requests "a no-soy or low-soy diet."  *Id.*, at 3, 7.  He further contends the Defendants "knew or reasonably should have known that the high level of soy protein in this new menu would expose the Florida prisoner population to serious medical problems."[2]  *Id.*, at 4.

**Summary judgment motion, doc. 49**

Defendants assert they are entitled to judgment as a matter of law because the "soy protein products served as part of the 'master menu' program have been determined to be healthy and safe by national organizations."  Doc. 49, p. 2. Defendants point out that inmates "who do not wish to consume the soy protein products on the master menu can avoid them by choosing an 'alternative entree' at every meal."  *Id.*  Additionally, inmates with medical conditions "indicating they should not consume soy can seek medical attention and request a 'therapeutic' diet."  *Id.*

---

[1] Plaintiff alleged that when his grievances to change the "high soy diet" were denied, he attempted to selectively eat what he could, and "at times has gone hungry to eliminate the soy protein from his diet."  Doc. 9, p. 6.  He also alleged that doing so improved his physical health in several ways.  *Id.*  Plaintiff contends the "alternate bean menu" is "not sufficient to sustain a nutritionally balanced diet" and "causes excessive gas and intestinal discomfort . . . ."  *Id.*

[2] Plaintiff's complaint is not deemed to raise claims concerning medical care as none of these Defendants have any responsibility for providing medical treatment.

**Plaintiff's response, doc. 55**

Plaintiff contends there is a disputed issue of fact which should be resolved by a jury.  Doc. 55, p. 4.  Plaintiff contends a jury should decide whether the soy protein products served cause him to "suffer soy poisoning and create a risk to his health and well-being . . . ."  *Id.*  Plaintiff further disputes that the soy protein products "are healthy and safe" as asserted by Defendants.  *Id.,* at 4-5.

**Legal standards governing a motion for summary judgment**

On a motion for summary judgment Defendants initially have the burden to demonstrate an absence of evidence to support the nonmoving party's case.  Celotex Corporation v. Catrett, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 2553-54, 91 L. Ed. 2d 265 (1986).  If they do so, the burden shifts to Plaintiff to come forward with evidentiary material demonstrating a genuine issue of material fact for trial.  *Id.*  An issue of fact is "material" if it could affect the outcome of the case.  Hickson Corp. v. Northern Crossarm Co., Inc., 357 F.3d 1256, 1259 (11th Cir. 2004) (citations omitted).  Plaintiff must show more than the existence of a "metaphysical doubt" regarding the material facts, Matsushita Electric Industrial Co., LTD. v. Zenith Radio Corporation, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986), and a "scintilla" of evidence is insufficient.  The court must decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  Hickson Corp., 357 F.3d at 1260, *quoting* Anderson v. Liberty Lobby, 477 U.S. 242, 252, 106 S. Ct. 2505, 2505, 91 L. Ed. 2d 202 (1986).  All reasonable inferences must be resolved in the light most favorable to the nonmoving party, Watkins v. Ford Motor Co., 190 F.3d 1213, 1216 (11th Cir. 1999), if there is a

genuine dispute as to those facts. Scott v. Harris, 550 U.S. 372, 380, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007), *cited in* Ricci v. DeStefano, 129 S.Ct. 2658, 2677 (2009). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Matsushita Elec. Industrial Co., 475 U.S. at 587 (internal quotation marks omitted), *quoted in* Ricci v. DeStefano, 129 S.Ct. at 2677.

"Rule 56(e) . . . requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' " Owen v. Wille, 117 F.3d 1235, 1236 (11th Cir. 1997), *cert. denied* 522 U.S. 1126 (1998), *quoting* Celotex, 477 U.S. at 324, 106 S. Ct. at 2553 (quoting Fed. R. Civ. P. 56(c), (e)). The nonmoving party need not produce evidence in a form that would be admissible as Rule 56(e) permits opposition to a summary judgment motion by any of the kinds of evidentiary materials listed in Rule 56(c). Owen v. Wille, 117 F.3d at 1236; Celotex, 477 U.S. at 324, 106 S. Ct. at 2553.

**The relevant Rule 56(e) evidence**

At the time this case was initiated, Defendant Walter McNeil was Secretary of the Department of Corrections, and Defendant Thigpen was a senior management analyst supervisor. Doc. 49, pp. 2-3. Neither of those two Defendants are currently employed by the Department. Defendant Fuhrman is the public health nutrition program manager and a registered dietician, and Defendant Terrell is bureau chief for institutional support services. They each had "varying degrees of responsibility over the delivery of food service to FDOC inmates." Doc. 49, p. 2.

Defendant Terrell has supervision of the food service section.  Doc. 49, ex. A (hereinafter "Terrell affidavit").[3]  Florida prison inmates are "served meals pursuant to a 'master menu' meal program approved by an FDOC official who is a registered dietician, namely [Defendant] Fuhrman . . . ."  *Id.*, at ¶5.  Meat products from the Master Menu have no more than "50% Textured Vegetable Protein (TVP)."  *Id.*, at ¶6.  There are "three TVP entree items which are served six times over the course of the 28-day menu cycle."  *Id.*  "TVP is a high protein food product which has a negligible fat content" and is "considered a 'heart healthy' food item."  *Id.*  Manufacturers of the TVP state that "soy protein is economical and comparable in quality to animal and milk proteins."  *Id.*, at ¶7.  Soy protein also "contains all nine essential amino acids."  *Id.*  Soy flour is not used in bakery products and the Protein Digestibility Corrected Amino Acid Score of "TVP is 0.94 as compared to the top score of 1.00 for egg white and casein."  *Id.*

 Inmates who do not want to eat meat or TVP can choose the alternate entree meal which is available at every meal.  *Id.*, at ¶8.  "The alternate entree meals consist of cooked dried beans, cheese, or peanut butter."  *Id.*  Additionally, "inmates may be prescribed a therapeutic diet if a medical condition exists that prohibits them from eating the regular menu."  *Id.*, at ¶9.  According to policy, if an inmate suspects he is allergic to soy or a medical condition and indicates "he should not consume soy, he can be tested medically and placed on a therapeutic diet."  *Id.*

---

[3] Defendants provided affidavits by Defendant Thigpen (Ex. B; doc. 49-1) and Defendant Fuhrman (Ex. C; doc. 49-1) which are virtually identical to Defendant Terrell's affidavit.  Thus, only Defendant Terrell's affidavit is referenced.

"All meals provided to the general inmate population meet the Dietary Reference Intakes as established by the Food and Nutrition Board of the National Academy of Sciences."  *Id.*, at ¶10.  The National School Lunch and Breakfast Program has also "approved soy as an Alternate Protein Product (APP) for use in [that] federally funded program."  *Id.*, at ¶11.  That program requires that an "alternate protein product must contain at least 18% protein by weight when fully hydrated."  *Id.*  The Department's soy products meet the program's requirements.  *Id.*

"The American Dietetic Association (ADA) has indicated that 25 grams or more of soy protein per day has been associated with a reduction in total and LDL-cholesterol levels, and thus with reduced risk of coronary heart disease."  *Id.*, at ¶12.  Moreover, the Food and Drug Administration's expert panel reviewed scientific findings regarding soy proteins and concluded "soy protein is generally recognized as safe (GRAS) after this scientific investigation."  *Id.*, at ¶13.

Plaintiff presented as evidence three articles which were obtained from Defendant Fuhrman in discovery.  Doc. 55, ex. A.  The first article is on Soy from MedlinePlus and states that "[s]oy in your diet can lower cholesterol" and notes that "25 grams per day of soy protein, as part of a diet low in saturated fat and cholesterol, may reduce the risk of heart disease."  Doc. 55, ex. A.  That article also states that "no serious short-term or long-term side effects have been reported from eating soy foods."  *Id.*  "Persons with gout should not eat a lot of soy products" due to the presence of purine in soybean.  *Id.*  The article lists "[c]ommon mild side effects," which "include stomachaches, constipation, and diarrhea."  *Id.*

The second article is entitled, "Is It Safe to Eat Soy?"  Doc. 55, ex. A (doc. 55-1, p. 5).  After noting there have been both positive and negative reports on soy, the articles states its purpose: "Hopefully, we can tread a more even path here and convince you that, while soyfoods may not be the answer to all your problems, and while there certainly are a few unanswered questions, you can include soyfoods in a balanced and healthful vegan diet."  *Id.*[4]  The article concludes that soy "appears to be perfectly safe for nearly all healthy individuals when it is consumed in reasonable amounts."  Doc. 55-1, p. 8.  "We would say that a reasonable amount of soy is two to three servings per day."  *Id.*

All three of the exhibits provided by Plaintiff conclude that soy foods are safe, have health benefits and no serious "side effects have been reported from eating soy foods."  Doc. 55-1, p. 3.  There "is no reason to believe that eating soyfoods is harmful to brain again."  Doc. 55-1, p. 6.  There is "no reason for women who have had breast cancer to avoid moderate consumption of soy" and "no reason to restrict soy" for women who have never had cancer.  *Id.*, at 7.  "[T]here is little reason to think that soyfoods aren't safe for men."  *Id.*, at 8.

Plaintiff provides evidence that "many of the items of the alternative trays" also contain soy protein.  Doc. 55, p. 14; *see* Ex. G.  Plaintiff has provided labels for items such as sugar cookie mix, turkey pattie, pasteurized process sandwich slices, soybean salad oil, cornbread mix, ground turkey, smoked turkey sausage, textured vegetable

---

[4] Plaintiff provides a quote from the article noting that in 1991-1993 research, "just two to four servings per week" of Tofu "was associated with poorer test performance and more brain loss."  Doc. 55, pp. 7-8, *quoting* Ex. A. Tofu, however, is not the same as textured vegetable protein.

protein product, morning beverage, banana instant pudding, brownie mix, sweet cornbread mix, white cake mix, and imitation cheddar cheese shred. Ex. G (doc. 55-2, pp. 13-25). These items all contain soy. However, the beginning of Plaintiff's Exhibit G contains the Master Menu, showing meals for breakfast, lunch, and supper from Sunday through Saturday. Doc. 55-2, pp. 5-12. The "alternate entree" is denoted by "AE" on the form and lists only cheese as an alternate entree for breakfast, and "dried beans" as the alternate entree for lunch or supper. Thus, the labels showing soy contents that Plaintiff has submitted concern only the soy in the regular menu, not in the the alternate entree choice.

Plaintiff has not submitted his own affidavit, but he has provide the affidavits of other inmates who all generally complaint of digestive problems. Ex. I (Doc. 55-3). Inmate Meddler states that after discussing soy poisoning with other inmates, he began "eliminating most of the soy items" from his diet and has felt "much better, although some symptoms still remain." *Id.*, at p. 7. He further complains that when attempting to avoid items with high soy content, he passes gas frequently or is hungry. *Id.* The other inmate affidavits are similar. Doc. 55-3, pp. 10-22.

**Analysis**

Defendants' evidence is that Defendant Fuhrman "approved" the master menu program and , thus, there is no basis for holding liability against the Defendant Secretary of the Department of Corrections. As no evidence has been provided as to Plaintiff's claim against the Secretary, summary judgment is granted in his favor.

The United States Constitution does not require "comfortable prisons" with all the amenities, but it requires that prisons not be "inhumane." Farrow v. West, 320 F.3d

1235, 1242 (11th Cir. 2003), *citing* Farmer v. Brennan, 511 U.S. 825, 832, 114 S.Ct. 1970, 1976, 128 L.Ed.2d 811 (1994). The conditions of prison life and the treatment of prisoners is governed by the Eighth Amendment, which prohibits cruel and unusual punishment. Farrow, 320 F.3d at 1242-43, *citing* Helling v. McKinney, 509 U.S. 25, 31, 113 S.Ct. 2475, 2480, 125 L.Ed.2d 22 (1993). In general, "prison conditions rise to the level of an Eighth Amendment violation only when they 'involve the wanton and unnecessary infliction of pain' " Chandler v. Crosby, 379 F.3d 1278, 1289 (11th Cir. 2004), *quoting* Rhodes v. Chapman, 452 U.S. 337, 347, 101 S.Ct. 2392, 2399, 69 L.Ed.2d 59 (1981).

A two-part analysis governs Eighth Amendment challenges to conditions of confinement. Chandler, 379 F.3d at 1289. "First, under the 'objective component,' a prisoner must prove that the condition he complains of is sufficiently serious to violate the Eighth Amendment." Hudson v. McMillian, 503 U.S. 1, 8, 112 S.Ct. 995, 999, 117 L.Ed.2d 156 (1992), *cited in* Chandler, 379 F.3d at 1289.

> The challenged condition must be "extreme." *Id.,* at 9, 112 S.Ct. at 1000. While an inmate "need not await a tragic event" before seeking relief, *Helling v. McKinney,* 509 U.S. 25, 33, 113 S.Ct. 2475, 2481, 125 L.Ed.2d 22 (1993), he must at the very least show that a condition of his confinement "pose[s] an unreasonable risk of serious damage to his future health" or safety, *id.,* at 35, 113 S.Ct. at 2481. Moreover, the Eighth Amendment requires more than a scientific and statistical inquiry into the seriousness of the potential harm and the likelihood that such injury to health will actually be caused by exposure to [the challenged condition of confinement]. It also requires a court to assess whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose anyone unwillingly to such a risk. In other words, the prisoner must show that the risk of which he complains is not one that today's society chooses to tolerate. *Id.,* at 36, 113 S.Ct. at 2482.

Chandler, 379 F.3d at 1289.  The second part of the analysis requires prisoners to show that prison officials "acted with a sufficiently culpable state of mind" regarding the condition at issue.  Hudson, 503 U.S. at 8, 112 S.Ct. at 999 (marks and citation omitted); 379 F.3d at 1289.  "The proper standard is that of deliberate indifference." Chandler, 379 F.3d at 1289, *citing* Wilson v. Seiter, 501 U.S. 294, 303, 111 S.Ct. 2321, 2327, 115 L.Ed.2d 271 (1991).

     While prison food need not be "tasty or aesthetically pleasing," it must be "adequate to maintain health."  LeMaire v. Maass, 12 F.3d 1444, 1456 (9th Cir.1993) (finding inmate's allegations about the use of Nutraloaf did not "rise to the threshold level of a deprivation that satisfies *Wilson's* objective component."), *citing* Cunningham v. Jones, 567 F.2d 653, 659-60 (6th Cir. 1977).  "Federal courts '[c]annot be concerned with a prison menu to which prisoners believe they are entitled.  These involve matters of internal prison administration.' "  Tunnel v. Robinson, 486 F.Supp. 1265, 1269 (W.D.Pa.1980), *quoted in* Ruiz v. Furnham, 2010 WL 5289003, * 2 (N.D.Fla., 2010).

     In considering these guiding principles and evaluating Plaintiff's claims on this record, it cannot be said that Plaintiff has demonstrated the violation of the Eighth Amendment.  Here, the objective factors prove fatal to Plaintiff's claim.  The evidence reveals that while prisoners are served food which contains soy, it is safe, it provides no serious health risks, and has been shown to be beneficial to reduce cholesterol and the risk of heart disease.  The evidence further reveals that if an inmate does not want to eat foods deemed by the inmate to be "high" in soy content, he may choose an alternative entree.  Plaintiff's displeasure at the alternative or the side effects (flatulence) from that alternative does not render it unconstitutional.  The Eighth Amendment

prevents Plaintiff from being subjected to an "extreme" condition, which poses an "unreasonable risk of serious damage." See Chandler, 379 F.3d at 1289-90. Plaintiff has not provided any evidence which shows that the Master Menu poses an excessive or substantial risk of harm to him, especially in light of the ability by the Plaintiff himself to avoid foods that may increase his discomfort or flatulence.

I also find no evidence to support the subjective factor. Defendants have shown that soy protein "is economical and comparable in quality to animal and milk proteins." There is no evidence that serving soy products produces harm, much less any evidence to support this factor by showing Defendants *intended* such harm or had a "culpable state of mind" regarding the food served to prisoners.

Although I had doubts as to the viability of this claim, Plaintiff was permitted to proceed with the case, service was directed and discovery undertaken. Having now concluded that opportunity for Plaintiff to support his claims, it is now clear that he cannot do so. The harm to Plaintiff, if any, is not substantial and does not rise to the level of a constitutional injury. The amount of soy, as shown by the relevant evidence, simply cannot be found to violate "contemporary standards of decency," or constitute the denial of "the minimal civilized measure of life's necessities." Chandler, 379 F.3d at 1289-90; Farrow, 320 F.3d at 1243; Rhodes, 452 U.S. at 347, 101 S.Ct. at 2399. Indeed, this case follows three prior decisions in the Northern District of Florida that have concluded the Department of Corrections' menu does not violate the Eighth Amendment. See Harris v. McNeil, 5:10cv76-RS/MD; Ruiz v. Furnham, 2010 WL 5289003, 4:10cv275-MP/GRJ (N.D. Fla. 2010); and Mott v. Fuhrman, 2010 WL 3385338, 5:10cv146-SPM/AK (N.D. Fla. 2010). Summary judgment should be granted

in Defendants favor as Plaintiff has failed to show that the food menu of the Department of Corrections violates the Eighth Amendment.

In light of the foregoing, it is respectfully **RECOMMENDED** that Defendants' motion for summary judgment, doc. 49, be **GRANTED,** and judgment be entered in Defendants' favor.

**IN CHAMBERS** at Tallahassee, Florida, on December 5, 2011.


 S/     William C. Sherrill, Jr.
**WILLIAM C. SHERRILL, JR.**
**UNITED STATES MAGISTRATE JUDGE**


**NOTICE TO THE PARTIES**

**A party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 14 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**